# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

**SHENAY BOONE**

        Plaintiff,

v.

**SAGINAW HEALTH CLINIC, PLLC,**

   Defendant,

_____/

GAFKAY LAW, PLC
BY:   JULIE A. GAFKAY (P53680)    **"DEMAND FOR JURY TRIAL"**
Attorney for Plaintiff
175 S. Main Street
Frankenmuth, MI 48734
(989) 652-9240
jgafkay@gafkaylaw.com
_____/

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a Judge in this Court.

## **PLAINTIFF'S  COMPLAINT AND JURY DEMAND**

**NOW COMES**, Plaintiff, Shenay Boone, by and through her attorney, Gafkay Law, PLC, and hereby files this action against Defendant, Saginaw Health Clinic, PLLC, as follows:

1

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Shenay Boone (hereinafter "Plaintiff"), is a resident of the County of Saginaw, State of Michigan.

2. Defendant, Saginaw Health Clinic, PLLC (hereinafter "Defendant"), is a limited liability company in the State of Michigan.

3. Plaintiff assets a retaliation claim against Defendant under the False Claims Act ("FCA") pursuant to § 3730(h).

4. Plaintiff also asserts a Michigan public policy wrongful discharge claim against Defendant.

5. This Court has jurisdiction over this case under 28 USC § 1331 and 28 USC § 1367.

6. Venue is proper in the Eastern District of Michigan pursuant to 28 USC § 1391(b).

## GENERAL ALLEGATIONS

7. Plaintiff became employed with Defendant in or about December of 2019 as a Medical Assistant.

8. At all pertinent times, the provider at Defendant who supervised the Clinic was Syed Sami, MD (hereinafter "Sami").

9. At all pertinent, the Office manager for Defendant was Cindy Prottenger ("Prottenger").

10. In January, 2020, Defendant acquired an EasyRa which analyzes urine to test whether positive for drugs.

11. Plaintiff trained to use the EasyRa, and Defendant's made her responsible for running the EasyRa in or about January of 2020.

12. Many of Defendant's patients have Medicaid or Medicare coverage.

13. After Plaintiff became the primary person running the urine test results for Defendant with the Easy Ra, she noticed that Prottenger was billing for running urine samples before Plaintiff ever ran the urine samples.

14. Plaintiff believed it was Medicaid and/or Medicare fraud to bill for services not yet rendered.

15. In or about March of 2020, Plaintiff complained to Prottenger about billing for running urine tests before the service was done.

16. Plaintiff told Prottenger it was Medicare fraud to bill for running the urine before it was done.

17. On or about March 28, 2020, Plaintiff went on a pre-planned vacation to Texas.

18. When Plaintiff returned, her hours were cut by Defendant from 40 hours a week to 2 days a week; when Plaintiff asked Sami about the reduction, she was told it was due to COVID-19, even though there were other employees whose hours were not cut.

19. In April of 2020, Sami told Plaintiff he only wanted the EasyRa machine ran twice a week, so she would continue working only twice a week.

20. When Plaintiff's hours were involuntarily reduced, she took on other responsibilities when she was not working with Defendant, such as caring for her son whose daycare was closed due to COVID-19 and accepting work to help do testing for the COVID-19 global pandemic.

21. Defendant continued to bill for urine samples not yet tested.

22. In May of 2020, Plaintiff was directed by Prottenger to run a urine sample for a patient who had already been billed, but Plaintiff did not have a urine sample for that patient.

23. Plaintiff contacted the third-party vendor that worked onsite collecting the urine samples (Orchard Labs) and requested the urine sample.

24. When Plaintiff advised Prottenger the urine sample could not be located, Prottenger directed Plaintiff to run a urine sample of a different patient and bill it under the patient whose urine could not be found, but who was already billed.

25. Plaintiff refused to run the urine test under the wrong patient because she knew it was illegal to do so, and she refused to violate the law; Plaintiff's understanding was one of the patients was covered by Medicare and the other by Medicaid.

26. On or about Monday, May 18, 2020, Plaintiff met with Prottenger and Sami, who told Plaintiff she would not be running the EasyRa machine any longer, and supposedly they had a different project for her, although Plaintiff was asked to turn in her key to the office building at that time.

27. Later that week, on or about May 22, 2020, Plaintiff was discharged.

28. A motivating factor for Plaintiff's discharge was in retaliation for her taking steps to bring a False Claims Act and/or her refusal to violate the law.

29. Plaintiff has suffered emotional distress, humiliation, mental anguish, back pay, future pay loss, and other benefit damages as a result of Defendants' actions.

## COUNT I - RETALIATION CLAIM UNDER FALSE CLAIMS ACT, 31 USC § 3730(h)

30. Plaintiff hereby re-alleges and incorporates by reference the preceding paragraphs.

31. During Plaintiff's employment, she investigated concerns which could reasonably have led to a false claims action.

32. Defendant knew Plaintiff was acting in furtherance of a false claims action.

33. Defendant retaliated against Plaintiff for engaging in protected activity under the False Claims Act.

34. Plaintiff hereby asserts a claim against Defendant under the False Claims Act pursuant to § 3730(h).

35. Plaintiff seeks all damages available pursuant to § 3730(h) including double back pay, plush interest; special damages, which include litigation costs, reasonable attorney's fees, emotional distress, and other noneconomic harm from the retaliation.

## COUNT II – PUBLIC POLICY WRONGFUL DISCHARGE CLAIM AGAINST DEFENDANT

36. Plaintiff hereby re-alleges and incorporates by reference the preceding paragraphs.

37. Defendant, through its agents, servants, or employees, violated the public policy of the State of Michigan including, but not limited to, MCL 400.111b(17).

38. Plaintiff refused to violate these policies and refused to follow Prottenger's directive to violate said policies.

39. Defendant discharged Plaintiff in whole or in part for refusing or failing to violate the public policy of the State of Michigan.

40. As a direct and proximate result of Plaintiff's refusal to breach the public policy of the State of Michigan, and as a result of Defendant's retaliatory discharge of Plaintiff, Plaintiff has been placed in financial distress, has suffered loss of wages and benefits, loss of earning capacity, and loss of ability to work—and will suffer losses in the future.

WHEREFORE, Plaintiff, Shenay Boone prays for Judgment against Defendants for all damages awardable under the law, in an amount that the jury deems just, together with costs, interest, and allowable attorney fees.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in the above-captioned.

Respectfully submitted,

GAFKAY LAW, PLC

Dated: \_\_\_\_\_          s/Julie A. Gafkay
Julie A. Gafkay (P53680)
Attorney for Plaintiff
175 S. Main Street
Frankenmuth, MI 48734
(989) 652-9240
jgafkay@gafkaylaw.com